1-22-1290-WC. Janiqua Carter, appellant by Adam Scholl versus the Illinois Workers' Compensation Commission, Chicago Transit Authority, Appali, by Irina Dimitrova. Mr. Scholl, you may proceed. Thank you. If it may please the court, my name is Adam Scholl. I represent the petitioner, I should say, Workers' Competitioner, but in this matter it's an appellant, Ms. Janiqua Carter. In my brief, I try to outline and keep this thing a very simple argument here, but I would like to express it at this point. It is our position that the Illinois Workers' Compensation Commission exceeded its authority in making a determination that the appellant, Ms. Carter, was not entitled to use calculation of a wage differential claim, the contractual wage rate of $35.01 that was set forth in a tentative agreement between the unions and the CTA. It is the position of the commission that because she was terminated, for which they described as just cause at an earlier date, she is not allowed to use the contractual rate that was subsequently agreed upon post-termination. Now, considering a wage differential award under Section 81 of the Act, the commission found that Ms. Carter was not entitled to the bus operator contractual rate in 2018 of $35.01 per hour because she was terminated again prior to the tentative agreement. Now, I refer you to the commission's decision contained within our brief, specifically appellate appendix page 812 in my brief or page 92 of the record appeal, which is the commission decision. Now, on that page, addressing the issue of her termination, the commission said, quote, between the date of the petitioner's accident and the issuance of the first arbitration hearing date, petitioner was terminated from respondent's employment. The record contains an independent OEIG investigation following a 2013 complaint predating petitioner's accident that she falsified FMLA paperwork. Respondent then conducted its own investigation and concluded that petitioner had also violated CTA policies. So here's the big quote here. On that basis, petitioner was terminated for cause, effective February 12th, 2015. So effectively, the commission made a decision concerning the validity of the discharge that CTA is firing. Respondent states within its brief that the commission did not rule on the propriety of the discharge because the issue was never raised in the context of the arbitrator's proceedings. I believe the quote that I just read from the decision clearly refutes that argument. They clearly made a determination that the petition was terminated for cause. Now I reference in my brief, the Illinois Supreme Court case of interstate scaffolding, which I'm sure comes before this court multiple times a year. And within its decision, the Illinois Supreme Court was more than clear that the commission should not be determining the propriety of a discharge as it does not have general or common law powers. If that is truly the case, then how is it possible that the commission in this matter can take into consideration the OIG report and an internal investigation of the appellant and render a determination that she was terminated for cause? If this court were allowed to this, the commission's decision to stand, the jurisdiction has now fallen upon the commission to make such determinations in the future as to all matters or all situations similar to this for which termination was made within the context of while the person was involved in their workers' compensation claim. And that matters, it can matter to whether it's TTD or wage differential or whatever matter. Consequently, per the statutory language, the wage differential award should have been awarded to Ms. Carter, reflecting the wage she was earning at the time of the hearing, but for the work-related injury pursuant to the statute. And the average weekly wage she found for herself at the security guard should be the lower rate. It's our belief that $35.01 less the wages that she earned should have been the wage differential that was awarded by the commission. Now, I wish to also address that response argument within its brief that states that even if the court sides with my argument, Ms. Carter did not prove her entitlement to a wage of $35.01. Ms. Carter was not entitled to a wage of $35.01. We wholeheartedly disagree with this. At arbitration, the petitioner testified that the current union scale paid to bus operators was $35.01 per hour. That's in the record on page C222. In support of what the petitioner testified, we introduced an exhibit which is a copy of a tentative CBA agreement, reflecting that the wage agreement was established to be, as of July 1st, 2018, to be $35.01. This document or exhibit is contained on page C5-4 to C5-7 on the record of appeal. It's also within Appelli's brief as a supplemental index SA-1. The CTA attorney at the time of arbitration did not dispute the accuracy of the document, nor did point out that the document was invalid due to the fact that the CBA was not yet ratified. At arbitration, throughout the whole arbitration, no evidence or testimony was introduced that countered the claimed wage rate of $35.01. Consequently, the arbitrator used that rate in determining that award as part of the wage differential calculation. If you read the arbitrator's decision, he in fact stated that the parties agreed, it was his impression at least, the parties agreed that $35.01 was the contractual weight that she was able to earn had she still been working as a bus driver. At commission level, the issue of the validity of the $35.01 rate under the contract was not raised on review at all by the CTA. In fact, within the findings of fact of the commission, it stated that the record contains the relevant portion of the CBA reflecting that a full-time bus operator would have been earning $35.01 effective July 2018. CTA now presents within its brief a new issue that's never been presented at any point to the commission, that the court cannot rely on a contractual of $35.01 because the contract was not ratified between the unions and the CTA until 2019. The CTA asked you to take judicial notice of the contract which it provided a website link within its footnote on pages 24 and 25 of its brief. We have several arguments in response. First, the offer of testimony by Ms. Carter and the tentative agreement more than adequately provided circumstantial evidence to the commission. The burden at that point at the time of arbitration shifted to the CTA and it provided zero evidence to counter Ms. Carter's claim that the bus operators were being paid $35.01 for the tentative agreement at the time. Additionally, if you review the document of the tentative agreement, it states on the bottom that the retroactive pay was to be paid no later than March 1st of 2018. I believe that provides support that the tentative agreement concerning the wage was in effect even though it had not been fully ratified as to all issues. The second, this issue concerning the $35.01 or whether or not it's valid was never presented to the commission. As such, the commission adopted this wage rate within this finding's effect. Third, if the CTA wants to take judicial notice of this contract and ratification as of August 2019, which is a year after our accident, then it might as well take judicial notice of page three of the agreement, which confirms that the wage rate for bus operators as of July 1st, 2018 was indeed $35.01. Lastly, if for whatever reason that this court accepts the CTA's argument that $35.01 calculated as of July 1st, 2018 is incorrect, then we do believe that it can be figured out in wage rate that is larger than the one awarded by just looking at the fact that the contract said that the wage rate goes up 1% each year. All we have to do is reduce it 1% downward in order to get the wage rate. Overall, my brief is short as well as my argument for the most part. It is our position that the commission had no authority whatsoever to be able to state that the petitioner was terminated for cause. As such, they should have considered what petitioner could be earning at the time of trial if she was still fully employed as a bus operator with the Chicago Transit Authority. Evidence was presented, testimony was presented, that $35.01 was the hourly wage for bus drivers with the CTA at that time. That was never challenged by the respondent at any point until at this point during the appellee's brief. As such, we believe that the decision of the commission needs to be modified and sent back, at which time they should state that a wage differential should be based on an hourly wage of $35.01 less the average weekly wage that she was earning as a security guard of $401.63. In total, she should have been awarded $665.85 per week from the date of trial to the present date. I'm open to any questions. What do you consider her occupation was? I think she was a full-time bus operator with the Chicago Transit Authority. Well, so with the Chicago Transit Authority as part of her occupation, or is it just full-time bus driver? I think she's a full-time bus driver, a contractual full-time bus driver with the Chicago Transit Authority, and not just a driver similar to a school bus driver or anything else. So in determining the amount that a petitioner would be able to earn in the full performance of his or her duties in the occupation in which he was engaged, we should consider how much he's being paid by that particular employer, or what she would be able to earn, or the petitioner would be able to earn in the open market at the occupation as opposed to for that particular employer. Because bus drivers vary, I don't know if you can look at similar situations when you have a union contractual employee. Again, we're talking about she could be working as a bus driver, she could be working for a variety of different companies, whether it be a school bus driver, she could be working as a pace driver, which has its own contract. But in this particular case, she was a CTA bus driver, a contractual employee, and as such, we should be able to look directly at what she could be earning as a contractual CTA bus employee. Other questions? Okay, Mr. Shulman, you'll have time and reply. Thank you, I appreciate that. Ms. Dimitrieva, am I pronouncing that correct? Good afternoon, your honors, and may it please the court. I want to apologize for the technical issues. We had major technical issues, which actually were worked out about 45 minutes ago, but they reappeared now, and I just don't want to interfere with the connection trying to reinstall the background. So just apologies for this. My name is Irina Dimitrieva, I represent the Chicago Transit Authority in this matter. The issue before this court is the commission's calculation of the claimant's wage differential award and its amount, not her entitlement to it. In fact, the claimant has been receiving her wage differential payments bi-weekly since the commission's decision in August 2019, paid retroactively to the arbitrator's decision a year earlier. And the commission awarded the claimant about $345 per week in the wage differential until she turns age 67. In the current action, she seeks to approximately double that amount to $665 per week. And we urge this award because in making it, the commission made a factual finding that is not against the manifest weight of the evidence. And specifically, the commission found that the evidence establishes that the claimant would not be able to earn $35 per hour as a CTA bus operator at the time of the commission's finding. The only basis in the record for the $35 rate is a summary of a tentative collective bargaining agreement between the CTA and the union representing its bus operators, which projected wage increases upon its ratification. Specifically, the very document on which the claimant relies states, all employees employed on the date of ratification shall receive a 5% increase receiving full retroactive pay. So there are two issues that we see with relying on this document as evidence of a rate to which the claimant would have been entitled here. First, by its own terms, the tentative agreement applies only to the employees employed by the CTA on the date of ratification. So in a sense, what the claimant wants to do here wants to eat your cake and have it too because she wants to use one part of this tentative agreement, specifically the rate. But she completely ignores the provision that under this contractual provision, which ended up on the final agreement, that rate, she was not eligible for this rate because by her own acknowledgement, she was not employed by the CTA at the time of ratification or even at the time of the arbitration hearing. And she was not employed by the CTA because three and a half years before the arbitration hearing and four and a half years before the ratification, she was laid off for reasons completely unrelated to her injury, which she does not dispute. So again, under the very terms of the document on which she herself relies, she would not be eligible for that rate. And second, the commission properly discounted this evidence of projected wage increases because at that point in time and at the point in time of the arbitration hearing, that rate was speculative. The CBA was not in effect at the time of the arbitration hearing in September 2018. And I reviewed the case law on wage differential awards of this court. And there are cases in which claimants introduce evidence of union agreements, CBA agreements as their rates at the time of the arbitration hearing. But all of these cases deal with CBA agreements in effect at the time of the arbitration hearing. And certainly, so post factum, we could say, yes, a year later when the agreement was ratified in August 2019, that ended up being the rate to which employees employed on the date of ratification were paid retroactively. So at the time of the arbitration hearing, CTA bus operators were not making $35 per hour. That sum was paid to them retroactively upon their ratification. And indeed, it's claimant's burden to prove her case and all shifts in that she is, the claimant is trying to make at this point, I believe is inappropriate because at all times, it was her burden to prove by preponderance of evidence what she would have made in the occupation, in her occupation of a bus operator at the time of the arbitration hearing. And so the method of calculating the wage differential award that the commission adopted by using her pre-injury earnings is not inappropriate. There's precedent for it that we cited. Indeed, this court has held on a number of occasions that where other evidence is speculative, it's appropriate for the commission to calculate wage differential award based on the claimant's pre-injury earnings. And these cases include Taylor versus Industrial Commission Albrecht and United Airlines. United Airlines case from 2013 is particularly interesting because there, this court ruled that the commission could not calculate the wage differential based on projected union rate increases. And so yet this is exactly what the claimant is asking this court to do in this case. And we submit that commission properly refused to rely on this evidence. Now, the claimant doesn't really disagree with any of the facts at issue. Instead, she's making an argument that what she would be earning absent the injury in her occupation is not really a factual inquiry, that there is somehow an irrebuttable legal presumption in the statute that absent her injury, she would be continuing to work for a particular employer. And we submit that there is absolutely no support for this position. To begin with, the most important case like that the claimant cites in this scaffolding, it's completely in opposite here because it deals with temporary total disability benefits, which are governed by a completely different subsection of the statute, subsection 8B, not subsection 8D. And that subsection uses a different language in calculating temporary total disability benefits. The words, the terms such as usual and customary line of employment, occupation that the statute uses in the wage differential award section are not used in the commission decisions on which she relies. They deal with maintenance benefits and vocational rehabilitation programs. Again, under the statute, these benefits are calculated based on temporary total disability formula, and the formula is different. Also, when we think about the goals underlying total temporary disability payments and wage differential award payments, they're again different, and the Supreme Court explained them. So, TTD benefits are meant to enable employee to reach maximum medical improvement to re-enter the workforce. And so, if they are discontinued for whatever reason, that purpose is inhibited. So, the injured employee remains injured without funds to, you know, get medical care or vocational training, so his purpose of re-entering the workforce is inhibited. Now, the wage differential awards, they have a somewhat different purpose. They are awarded at the point when the employee has already reached maximum medical improvement and either has re-entered or is capable of re-entering the goal of the commission here is to compensate the employee for the reduction in the earning capacity. In this determination, what is the earning capacity by how much it got reduced? These are factual inquiries that the commission is uniquely situated to address. And so, in this particular case, based on the entirety of the evidence presented, the commission determined that we know one fact for sure, that even absent her injury, the claimant would not have been working as a CTA bus operator at the time of the arbitration hearing. Let me go back to this question I asked your opponent. What do you consider her occupation? Well, her occupation is a bus driver or bus driver working for the CTA. So, her occupation is a commercial bus driver, and we know it from the note that Christos Giannoulias, the doctor, when he released her from his care, when she reached the maximum medical improvement, he restricted her from working as a commercial bus driver. So, her occupation would be a bus driver, just like my occupation as a lawyer. I work for a private law firm, I work for the city of Chicago, I work for the CTA. That doesn't change my occupation. I'm a lawyer. If we want to be more granular, I'm a government lawyer. But just because I changed my employees from the city of Chicago to the CTA, that doesn't change my occupation. And so, here, the claimant, she used to work as a bus driver for a school company before joining the CTA. Nothing prevented her from introducing evidence at the arbitration hearing, what she would have been earning absent her injury as a bus driver for a different employer. Because whether rightfully or wrongfully, and it's true that the workers' compensation proceedings is not the right forum to talk about whether discharge for cause or not, and the commission didn't do it, for better or for worse, but the fact remains, she was not a CTA bus operator at the time of the arbitration hearing. So, her reduction in the earning capacity cannot include this fact. It would be, in a sense, fiction. It's a fiction to assume that absent her injury, she would have continued working for a particular employer. And there is nothing in the statute that prevents the commission from considering this fact. There is nothing in the statute that prevents the commission from considering that fact. I mean, I see nothing in the statute that creates an irrebuttable legal presumption that absent an injury, a claimant would have continued working for a particular employer. And so, in fact, like there is a Supreme Court case I found while preparing for oral argument of Flynn versus workers' compensation, in which the Supreme Court considered concurrent employment. And it states there that the terms, the line of employment, occupation, they don't allow for the possibility that it's particular employer. They are much broader terms. And so, when the General Assembly wants to limit consideration to particular employer, it certainly knows how to do it. It talks about that employment, a job, but instead it used the terms occupation. I'm intrigued. I'm intrigued by the question. If you have someone who's employed by, let's say, the CTA as a bus driver, earning X number of dollars, and the person can no longer work as a bus driver for the CTA, but it says that she's supposed to get two-thirds of the difference between her average amount which she'd be able to work in the full performance of the duties of her occupation. So, let's assume further that Metro pays more money than the CTA for bus drivers. Should the waived differential be calculated based on Metro's pay? Because that's the full performance of the occupation. Well, that would be a factual inquiry for the commission. So, if... No, I'm asking you a question. I don't think there is nothing to prevent... Could they consider the highest possible pay that a person can earn in that occupation? Or should it be directed to the pay from the employer that the person was engaged with at the time of the injury? And the only guidance we have is the language of the statute, and the language of the statute speaks in terms of occupation, which is a broader term. No, it speaks more than just occupation. It's the full performance of the duties in the occupation. Well, full performance of the duties, the way I understand it, is the work in full time. For instance, in Dawson, in the first district case, so the argument was that the wage differential commission earned because it should have allowed for the possibility that employee would have taken sick days or would have been absent for injury. And the court said, no, there is a presumption that absent the injury, the employee would be in the full performance of his or her duties. So, in my mind, the way I understand, full performance of the duties means working full time, not like light duty, not any reduced schedule. But then there is a second portion of that formula, full performance of the duties in the part of the formula talks about the occupation. Occupation is broader than the particular job. So, it is a factual inquiry by the commission. And certainly, employees will be free to introduce evidence of their value in the commercial marketplace. What would they have been able to earn as a commercial bus driver in a free marketplace, absent the injury. And that is how I understand it. OK. And so, we certainly believe that. Well, your time is up. Yeah, sorry. So, we believe that the commission made a factual finding that deserves some deference from this court and it is not against the manifest weight of the evidence and we urge this court to affirm it. Thank you. Thank you, counsel. Mr. Scholl, you may reply. Yeah, thank you. There is a few things that counsel had stated which have no support. And one of them is that she states that evidence supports that upon ratification, the individual people within the contract were paid retroactively. There is no evidence to support that. We did provide not only just that agreement, but the testimony of the petitioner who said they were earning $35.01 per hour at that time of trial. So, her claim is unsupported. They never presented any evidence to dispute the $35.01 upon the date of trial. Never. So, I have an issue with that. The other issue I have is with regard to this argument of termination. If an employer is going to just be able to say, oh, he's terminated, we terminated this individual, thus he's not entitled to a higher wage that maybe potentially was made down the road after an individual goes through vocational rehabilitation, what's to stop any employer from just terminating someone? Counsel, this whole termination argument is termination from an employer, not termination from an occupation. And it's calculated based upon the full performance of the duties in an occupation. And so, it's bus driver. She's a bus driver. So, now the question becomes what evidence is there in the record as to how much a person could earn as a commercial bus driver in the full performance of their duties? Judge, I understand where you're going with that. But I think that there is a unique difference here is that this person was a contractual employee. And because we can rely on a contract that reflects the potential wages that an individual could make had they been with their same employer, I think we can be able to use that. If we're just going to rely on occupation, then what burden is it on an attorney like myself to be able to establish what a wage rate is? Using counsel's example, for example, as an attorney. Well, I mean, the wage rate is, forget about bus driver, talk about a bricklayer. It was making $40 an hour with his employer, but the open market for a bricklayer in the full performance of his duties is $50 an hour. So, why shouldn't he be entitled to wage differential based on 50? I don't disagree with you, but you're naming a profession that is a contractual employee most likely as a union employee. I think most bricklayers that can make $50 are likely union people. But let's go back to the example counsel used of an attorney. Let's just say it was myself that has a loss of occupation. Can I look at what someone is making at Sidley and Austin based on my years of experience? Can I look at someone at Mayor Brown and Platt? Or do I have to look at all workers' comp attorneys? Because the occupation is I'm an attorney. So, it's very general just to say occupation. Because realistically, if I could say- I didn't say it, the legislature did. Well, I don't disagree with you, but I think at some point or another, if we have a situation where we have a contractual employee and we have a contract and we know for a fact what this individual would be earning at the time, I think we can rely on that particular document to establish wage rates. And again, what I was saying before is I am concerned about the fact that an employer can terminate anybody for some reason, whether it be clause or not clause, and say, guess what? They're not entitled to that higher wage rate that the individuals are now making because we terminated you. Because in this particular situation, we have any type of judicial body that said that this termination was legal. But that's not interstate scaffolding. In interstate scaffolding, they tried to use the termination to stop the TTD. No one is suggesting here that the termination eliminates your entitlement to a wage differential. So, of what value is interstate scaffolding? We got to figure what the full performance of the duties in her occupation is. And did the commission use some reasonable method for determining what that means? Right. But if you look at interstate scaffolding in the language of the Supreme Court, they're essentially stating is that they're not a body to make a determination of whether or not someone's terminated. It doesn't make any difference why they're terminated. Interstate scaffolding, what the factual basis for that was, they attempted to terminate his TTD because he was terminated. No one's making the argument here that she's not entitled to a wage differential because she was terminated. That would be interstate scaffolding. This is a case where it's what's the determination of the amount she would have been able to earn in pursuing the usual customary line of employment. And that's what the commission had to figure out. And they determined it was $35 an hour for whatever reason. I don't disagree. But, and again, I know my time is up, but I just, I guess my last point, my point is that I believe is that I think interstate scaffolding, we can interpret the fact is that the commission is able to claim the amount of the settlement contract that the CBA agreement says $35.01 because you were terminated. And because you were terminated for just cause, thus you cannot make that claim. Because that is what the commission had said and made a ruling. I thank you for your time. Thank you, counsel, both for your arguments in this matter this afternoon.